# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 8, 2020

Lyle W. Cayce
Clerk

No. 19-30711

United States of America,

*Plaintiff—Appellee*,

*versus*

Tyrone Larry Smith, *also known as* Marques Stewart, *also known as* Tyrone Letron Smith, *also known as* Tyrone Latron Smith, *also known as* Tyrone L. Smith, *also known as* Troy Green, *also known as* Antoine Lavell Franklin, *also known as* Michael Mummadd, *also known as* Taz,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:15-CR-184-1

Before Smith, Clement, and Oldham, *Circuit Judges*.

Andrew S. Oldham, *Circuit Judge*:

The United States convicted Tyrone Larry Smith of sex trafficking. After hearing an impassioned victim-impact plea, the district court sentenced Smith to 600 months in prison. On appeal, Smith argues that the district court should have suppressed certain evidence, including pictures that Smith used to prostitute a girl on Backpage.com. Smith also challenges the

No. 19-30711

procedural and substantive reasonableness of his sentence. Smith's arguments are meritless. We affirm.

I.

Smith trafficked a 14-year-old girl ("B.R.") across state lines. He forced B.R. to take pictures in suggestive poses and posted them to Backpage. Then Smith forced her to have sex with men. When B.R. expressed reluctance or refused, Smith punched her in the face and pointed a gun at her. *See United States v. Smith*, 895 F.3d 410, 413–15 (5th Cir. 2018) ("*Smith I*").

The Shreveport Police Department ("SPD") discovered the Backpage advertisements. On July 7, 2015, an SPD officer met B.R. at a hotel under the pretense of prostitution. B.R. told the SPD that she was a minor, that Smith had beaten her, and that he was her pimp. An SPD officer seized Smith's cell phone from the hotel room. Later that night, officers arrested Smith. He provided a statement admitting that he met B.R. online and that he was aware she was having sex with adult men in Shreveport. *Id.* at 415.

The United States charged Smith with sex trafficking in violation of 18 U.S.C. § 1591(a)(1), (b)(1), and (b)(2) ("Count One") and with interstate prostitution by coercion or enticement under 18 U.S.C. § 2242 ("Count Two"). Smith waived his right to a jury and chose a bench trial instead. He also chose to proceed *pro se*.

Smith filed a motion to suppress. He argued that officers illegally seized his cell phone from B.R.'s hotel room on the morning of July 7. Officers eventually got a search warrant for the phone in December 2015. But Smith argued that forensic analysis of the phone would show that officers accessed it on the day of his arrest—five months before the warrant issued.

No. 19-30711

The district court heard testimony from two competing experts. Smith's expert, a computer examiner, testified that forensic testing on the phone revealed activity between 9:40 a.m. (the time SPD seized it from B.R.'s hotel room) and 9:00 p.m. on July 7. The report revealed some web activity in addition to some "phone calls in and out" and "text messages to and from" the phone. The Government's expert testified that the data presented by Smith's expert was incomplete, that time stamps are often affected by time-zone settings, and that a processing delay between the server and the cell phone could account for the time stamps. Additionally, the Government's expert testified that the phone could have been turned off and on, which could have refreshed the browser and appeared on the forensic report as a new web search.

The district court denied Smith's motion to suppress because Smith based it on "speculation and unsupported conclusion." The court convicted Smith and sentenced him to 384 months on Count One and 240 months on Count Two. The court specified that the sentences would run concurrently.

Smith appealed. He argued that the Sixth Amendment entitled him to pivot on the morning of trial, decide not to proceed *pro se*, and demand counsel. Over Judge Jones's dissent, a panel of our court agreed with Smith. *See Smith I*, 895 F.3d at 419–22; *id.* at 423 (Jones, J., dissenting in relevant part). The divided panel vacated Smith's conviction and remanded for new proceedings. *Smith I*, 895 F.3d at 422.

On remand, the Government filed a superseding indictment, again charging Smith with Count One and Count Two. Represented by counsel, Smith again filed a motion to suppress the cell phone evidence. The district court again denied the motion because Smith continued to base it on "mere speculation." The court also determined that a hearing was unnecessary

3

because Smith "fail[ed] to identify any claims, evidence, or contentions that were not already litigated."

Smith pleaded guilty to Count One and reserved his right to challenge the district court's denial of his motion to suppress. At sentencing, the district court heard impassioned victim-impact testimony from B.R. She asked the district court to ensure that Smith would never walk out of prison. The district court sentenced him to 600 months in prison, plus five years of supervised release, and ordered $50,000 of restitution to B.R.

## II.

We start with Smith's motion to suppress evidence collected from his cell phone.

He first contends the district court erred in denying a hearing on that motion. We review for abuse of discretion. *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983). A district court abuses its discretion "if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." *United States v. Mann*, 161 F.3d 840, 860 (5th Cir. 1998). Hearings on a motion to suppress are only required where the movant "alleges sufficient facts which, if proven, would justify relief." *Harrelson*, 705 F.2d at 737. The burden therefore is on Smith to set forth a "definite, specific, detailed, and nonconjectural" basis for the hearing in his initial motion. *Ibid.*; *accord Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990) (holding that bare allegations without a factual basis are insufficient to warrant a hearing on a due-process claim).

But Smith's motion was devoid of facts that would justify relief. *Cf. Harrelson*, 705 F.2d at 738. The motion quoted the Fourth Amendment and explained that "[e]vidence obtained as a result of an illegal search must be excluded." But it failed to allege a sufficient factual basis for believing that any of the Government's evidence was connected to any constitutional

violation. Smith cited an expert report from his first trial showing activity on his phone. But his motion provided absolutely no factual link between that activity and any evidence introduced at trial. He complained that various "e-mail addresses and photographs" were seized in a pre-warrant search. But he provided no basis whatsoever for that contention. The motion simply replicated the same conclusory contentions that the district court heard and rejected in *Smith I*. The district court therefore did not err (much less abuse its discretion) in refusing to hold a hearing to explore Smith's "mere speculation" and repetitive arguments.

Smith also claims the district court's refusal to hold an evidentiary hearing violated his right to counsel. Smith's premise is sound, but his conclusion is not. Smith is quite right that the mandate of *Smith I* guaranteed him a right to a lawyer for his second trial. 895 F.3d at 422. But it does not follow that Smith had a concomitant right to a lawyered suppression hearing.

On remand following *Smith I*, the Government dutifully provided Smith an attorney. That attorney had the same right to request a suppression hearing as every other criminal-defense attorney, and the same obligation to prove Smith's entitlement to such a hearing. But the appointment of a lawyer didn't magically transform a losing argument into a winning one. Much less did it mandate a discretionary hearing. Even with a lawyer, Smith failed to "allege[] sufficient facts which, if proven, would justify relief." *Harrelson*, 705 F.2d at 737. So that is the end of that.

Irrespective of the hearing, Smith says the district court should have suppressed evidence from his cell phone. We will uphold the district court's decision "if there is any reasonable view of the evidence to support it." *United States v. Michelletti*, 13 F.3d 838, 841 (5th Cir. 1994) (en banc) (quotation omitted). And we are mindful that Smith bears the "burden of proving, by a preponderance of evidence, that the evidence in question was

obtained in violation of his Fourth Amendment rights." *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992).

Even if we credit Smith's expert testimony identifying "activity" on his phone after SPD officers seized it, Smith failed to show that officers *searched* it. Nothing in the Government's warrant application suggested any knowledge of the phone's contents. Instead, the application noted that SPD officers seized the phone during a sting operation and described the phone's relevance to an ongoing investigation for sex trafficking and prostitution. The judge authorized the warrant. *Only then* did the Government procure evidence later introduced at trial. We therefore agree with the district court that Smith's contentions regarding a pre-warrant search of his phone are premised on "mere speculation."

## III.

We now turn to Smith's sentencing arguments. Smith raises a hodgepodge of procedural and substantive objections. The one thing they have in common is meritlessness.

First, Smith argues that the rule of lenity requires a district court to resolve any ambiguity in the Guidelines in favor of an interpretation that imposes a lower offense level. The rule of lenity, of course, is a rule of *statutory* interpretation. *See Chapman v. United States*, 500 U.S. 453, 463 (1991). In a post-*Booker* world, the Guidelines are merely advisory. *See Kimbrough v. United States*, 552 U.S. 85 (2007). And in part because the Guidelines no longer carry the binding force of statutes, the Supreme Court recently rejected an effort to challenge the former in the same way prisoners challenge the latter. *See Beckles v. United States*, 137 S. Ct. 886, 894–95 (2017) (holding the Guidelines are not amenable to vagueness challenges in the same way statutes are). So it appears the rule of lenity no longer applies to the purely advisory Guidelines. *See United States v. Wright*, 607 F.3d 708, 719

No. 19-30711

(11th Cir. 2010) (W. Pryor, J., concurring) ("[T]he purposes of the rule of lenity suggest that it plays no role in the interpretation of advisory guidelines.").

But even if the rule of lenity *could* apply, we hold it does not because the relevant language is unambiguous.[1] The statutory text is clear. *See* 18 U.S.C. § 1591(b)(1) ("imprisonment for any term of years not less than 15 or for life"). And the Guideline is too. *See* U.S.S.G. § 2G1.3(a)(1) ("Base Offense Level: 34, if the defendant was convicted under 18 U.S.C. § 1591(b)(1)[.]"). And the district court made sure that Smith harbored no doubt about the relevant provisions:

> THE COURT: [T]he maximum punishment on Count 1 is a term of imprisonment of not less than 15 years or for life pursuant to 18 U.S. Code, Section 1591(a)(1) and (b)(1) . . . . Do you see that?
>
> SMITH: Yes.
>
> THE COURT: Do you understand that as a result of your decision to plead guilty that you face a minimum 15 years in a federal prison?
>
> SMITH: Yes.
>
> THE COURT: And you face up to a lifetime in a federal prison depending on the sentencing phase of this matter . . . . is that clear?
>
> SMITH: Yes.

---

[1] Our court has suggested in dicta that the rule of lenity might apply if the text of the Guidelines is ambiguous. *See, e.g.*, *United States v. Cortez-Gonzalez*, 929 F.3d 200, 205 (5th Cir. 2019) (holding the rule of lenity inapplicable because the Guideline was unambiguous); *United States v. Serfass*, 684 F.3d 548, 551 (5th Cir. 2012) (same). Since *Booker*, however, we've applied the rule of lenity to only one sentencing Guideline. *See United States v. Bustillos-Pena*, 612 F.3d 863, 869–70 (5th Cir. 2010) (considering U.S.S.G. § 2L1.2). We have not yet considered whether *Beckles* forecloses lenity challenges to the Guidelines. And because the Guidelines are unambiguous in this case, we need not resolve the question here.

No. 19-30711

In the absence of any ambiguity, the rule of lenity is irrelevant. *See United States v. Carbajal*, 290 F.3d 277, 283–84 (5th Cir. 2002).

Second, Smith claims the district court wrongfully refused to reduce his offense level for acceptance of responsibility. Under the advisory Guidelines, a defendant is entitled to a two-level reduction if he "clearly demonstrates acceptance of responsibility." U.S.S.G. § 3E1.1(a). But the burden is on the defendant to demonstrate his entitlement to that reduction. *United States v. Lord*, 915 F.3d 1009, 1020 (5th Cir.), *cert. denied*, 140 S. Ct. 320 (2019). And our review is exceedingly deferential. *See United States v. Silva*, 865 F.3d 238, 244 (5th Cir. 2017) (per curiam) (reviewing interpretation of § 3E1.1 under a standard "even more deferential than a purely clearly erroneous standard" (quotation omitted)).

Shortly after pleading guilty, Smith filed a *pro se* motion to withdraw his guilty plea. In it, Smith questioned the authenticity of much of the evidence against him. The district court denied the motion. Smith's counsel later argued that the district court could ignore the motion since Smith filed it with the goal of protecting "some of his legal arguments." But the probation officer thought differently. He saw the motion to withdraw as "inconsistent with acceptance of responsibility" and declined to recommend the reduction. The court agreed. That was not an error, much less an abuse of discretion, much less still the kind of super-duper error that meets the *Silva* standard. *See* 865 F.3d at 244.

Finally, Smith claims that his 600-month sentence was procedurally and substantively unreasonable. The parties dispute the standard of review applicable to these contentions because Smith preserved some and forfeited others in the district court. We reject his arguments under any standard of review.

Congress requires the sentencing court to state "the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). But this provision does not always require an exhaustive discussion of the sentencing factors. "The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). "When, as here, the district court imposes a within-Guidelines sentence, little explanation is required to make this showing." *United States v. Duke*, 788 F.3d 392, 396 (5th Cir. 2015) (per curiam) (quotation omitted).

The Pre-Sentence Report correctly calculated Smith's Guidelines sentence as 360 months to life. The district court's 600-month sentence falls within that range, and therefore the court had little obligation to explain the basis for it. The district court nevertheless explained that it was "moved by the power of [B.R.'s] victim impact statement made in this court today." The district court also credited the fact that Smith's horrific abuse of B.R. imposed "long-standing, if not lifelong, damage" on her. It also considered B.R.'s need for counseling, which "started on the day after the first sentencing in this case." The district court then calculated that B.R. had attended approximately 132 counseling sessions and found that those sessions would continue into the foreseeable future. The district court described the reprehensibility of "placing [a 14-year-old girl] into prostitution and deriving monetary benefit personally from trafficking [her]." And finally, the district court considered the 18 U.S.C. § 3553(a) factors, took account of Smith's criminal history, considered his "predatory

No. 19-30711

conduct," and emphasized the need for a heavy sentence to "send a message." That's far more than necessary to satisfy § 3553.[2]

It does not matter that Smith's co-defendant in the original trial, Lacoya Washington, was sentenced to 292 months. *See Smith I*, 895 F.3d at 418. It is true that sentencing courts "shall consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But it is untrue that Smith and Washington have similar records. Washington was a category I offender, while Smith fell into category VI. And the Guidelines recommended 292 to 365 months for Washington, while they recommended 360 months to life for Smith. Also, the district court made clear it based Smith's second sentence on B.R.'s compelling testimony that it did not have when it sentenced Washington. Neither law nor logic compels district courts to treat unlike defendants alike.

AFFIRMED.

---

[2] As the Government pointed out in its red brief, Smith does not invoke the presumption of vindictiveness. *See, e.g.*, *Wasman v. United States*, 468 U.S. 559, 564–65 (1984) (describing "what in essence is a prophylactic rule that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear" (quotations omitted)). Any vindictiveness challenge is therefore forfeited. *See United States v. Trujillo*, 502 F.3d 353, 360 n.30 (5th Cir. 2007) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal." (quotation omitted)). And in any event, the district court overcame any presumption by affirmatively stating the reasons for its increased sentence. *See United States v. Goodwin*, 457 U.S. 368, 374 (1982) (intimations of vindictiveness are overcome by "objective information . . . justifying the increased sentence").